UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

CAMILLUS CLEAN AIR COALITION;
ROBERT and COLLEEN BARTLETT;
WILLIAM and MICHELLE BARRINGTON, III;
KIM CALVERASE; DANIEL and VERUSKA
DANTUONO; DAVID and JULIETTE DEDO;
TIMOTHY and SALLY DELANY; BRIAN
and TRACY DELLOW; RON GRYZIEC;
BRENDA CARPENTER; DOUGLAS and
CHARLENE HART; THOMAS and
KIMBERLY KSHYNA; MATTHEW and
TRACY LICAMELI; JOHN and KATHLEEN
MARINELLI; WILLIAM and STEPHANIE
MATHEWSON; PETER and JENAFER
MEDINA; BRYAN MIGNONE; ELAINE
EVERITT; BRIAN and KIMBERLY MURPHY;
SCOTT and JILL MUSEMECI; JERRY and
KRISTINA PARZYCH; JONATHAN and
MARGARET PATCH; TIMOTHY and
SHARON PIEPER; FREDERICK and
HEATHER PUCHTA; LYNORE and MARK
de la ROSA; ROBERT and LORI SMITH;
JOEY ST. LOUIS; ROBERT and MEGAN
VERTUCCI; and MICHAEL and LYNDA
WADE,

          **Plaintiffs,**

      v.                5:13-CV-365
                           (FJS/DEP)

HONEYWELL INTERNATIONAL, INC.,

         **Defendant.**
_____

**APPEARANCES**              **OF COUNSEL**

**MCCALLION & ASSOCIATES, LLP**    **KENNETH F. MCCALLION, ESQ.**
100 Park Avenue   16th Floor
New York, New York 10017
Attorneys for Plaintiffs

| | |
|---|---|
| **GILBERTI STINZIANO** | **ANTHONY P. RIVIZZIGNO, ESQ.** |
| **HEINTZ & SMITH** | **MICHAEL A. FOGEL, ESQ.** |
| 555 East Genesee Street | |
| Syracuse, New York 13202 | |
| Attorneys for Defendant | |
| | |
| **ARNOLD & PORTER LLP** | **BRIAN D. ISRAEL, ESQ.** |
| 555 12th Street N.W. | **CHRISTOPHER A. JAROS, ESQ.** |
| Washington, D.C. 20004-1206 | **GEOFFREY J. MICHAEL, ESQ.** |
| Attorneys for Defendant | **ANDREA MASSELLI, ESQ.** |
| | |
| **OFFICE OF THE NEW YORK** | **ANDREW J. GERSHON, AAG** |
| **STATE ATTORNEY GENERAL** | |
| 120 Broadway | |
| New York, New York 10271 | |
| Attorneys for *Amicus Curia* | |

**SCULLIN, Senior Judge**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

Currently before the Court are Defendant's motion to dismiss Plaintiffs' claims for injunctive relief pursuant to Rule 12(b)(1) and Rule 12(b)(6) of the Federal Rules of Civil Procedure and Plaintiffs' motion for a preliminary injunction. The Court held a hearing with respect to these motions on May 15, 2013. At the conclusion of that hearing, the Court rendered an oral decision and advised counsel that the Court would issue a written decision setting forth its reasoning. The following constitutes the Court's written disposition of the pending motions.

### II. BACKGROUND

In 1989, New York State sued Allied-Signal Inc., seeking to compel Allied-Signal to undertake the cleanup of Onondaga Lake under the Comprehensive Environmental Response,

Compensation, and Liability Act ("CERCLA").  In 1992, Allied-Signal Inc. and New York State entered into a consent decree requiring Allied-Signal to undertake a remedial investigation and feasibility study for the Onondaga Lake Superfund Site in compliance with the regulations promulgated under CERCLA.  *See* 42 U.S.C. § 9605.  Defendant is the successor to Allied-Signal Inc.

In 1993, the United States Environmental Protection Agency ("EPA") and New York State Department of Environmental Conservation ("DEC") entered into a cooperative agreement pursuant to CERCLA § 104(d), 42 U.S.C. § 9604(d), with respect to the Onondaga Lake Superfund Site ("Cooperative Agreement").  The Cooperative Agreement provided that DEC would be the lead agency with respect to the site and would prepare, subject to EPA's approval, draft records of decisions setting forth the proposed remedial actions for each of the subsites of the Onondaga Lake Superfund Site, including the Onondaga Lake Bottom Subsite ("Site"), which is the subject of this action.

In 2004, following the completion of a Remedial Investigation and Feasibility Study ("RI/FS"), DEC issued a proposed cleanup plan for the Site ("Proposed Plan"), which DEC determined to be "protective of human health and the environment."  The Proposed Plan called for dredging up to 2.65 million cubic yards of sediment from the lake and transporting those sediments to a sediment consolidation area that Defendant would construct on its property in Camillus.  The Proposed Plan was subject to public comment from November 29, 2004, until March 1, 2005, and, after the concurrence of EPA, again from April 1, 2005, until April 30, 2005.

Following public comment, in accordance with CERCLA's requirements, EPA and DEC

issued a joint record of decision ("ROD") for the Site that set forth the selected remedy for the Site. Among other things, the ROD required dredging an estimated 2.65 million cubic yards of sediments from the lake bottom. In addition, the ROD required that dredged sediment be transported via pipeline to a sediment contamination area ("SCA") located in the Town of Camillus for treatment and storage. The ROD stated that EPA and DEC had determined that the selected remedy met the requirements set forth in CERCLA § 121, 42 U.S.C. § 9621, because, among other things, it was "protective of human health and the environment."

In 2006, Defendant and DEC agreed to enter into a proposed consent decree requiring Defendant to conduct the selected remedy for the Site set forth in the ROD that the DEC and EPA had issued. The proposed consent decree was subject to public comment from October 12, 2006, to November 13, 2006. On January 4, 2007, this Court entered the proposed consent decree ("Consent Decree") as an Order of the Court. The Statement of Work, Appendix C to the Consent Decree, required that Defendant make good faith efforts to design and construct the SCA within five years of entry of the Consent Decree and complete dredging operations within four years of construction.

Following entry of the Consent Decree, pursuant to its Cooperative Agreement with EPA, DEC retained primary oversight authority for the Site. Notably, DEC retained authority to review and approve Defendant's technical submittals prior to the start of dredging. Following DEC approval, all submittals were "incorporated into and bec[a]me an enforceable part of [the] Consent Decree."

Throughout the design of the SCA, Defendant submitted to DEC for approval a range of documents regarding a variety of technical issues at the SCA, including those relevant to the

health and safety of the project. In 2012, DEC approved the Community Health and Safety Plan for the project ("CHASP"), which detailed health and safety measures integrated into the project for the protection of the community and required the implementation of a comprehensive air monitoring program. Later that year, DEC approved the Quality Assurance Project Plan for the Air Quality Monitoring Program ("QAPP"), which detailed the air monitoring program for the SCA, including the air quality standards established for the Site.

Pursuant to its obligations under the Consent Decree, Defendant initiated dredging of the lake bottom and transporting dredged materials to the SCA in 2012.

On March 18, 2013, Plaintiffs filed the complaint in this action in the Supreme Court of the State of New York, Onondaga County. In their complaint, Plaintiffs asserted four causes of action grounded on the following theories: (1) negligence, (2) nuisance, (3) premises liability, and (4) trespass. *See* Dkt. No. 1-1. In addition to compensatory and punitive damages, Plaintiffs also sought the following injunctive relief:

> (1) an Order preliminarily and permanently enjoining Defendant from transporting and dumping contaminated dredged waste at Wastebed 13
>
> (2) an Order directing that Defendant implement the EPA-approved and state-of-the-art TO-16 monitoring system around Wastebed 13 in the vicinity of Plaintiffs' homes so that the air [could] be monitored on a real time basis for airborne contamination relating to Defendant's operations.

*See id.* at WHEREFORE Clause.

Defendant removed the action to this Court on April 2, 2013. On April 4, 2013, Defendant filed a motion to dismiss Plaintiffs' claims for injunctive relief. *See* Dkt. No. 6. Plaintiffs opposed that motion. *See* Dkt. Nos. 28-29. On April 12, 2013, Plaintiffs filed a

motion for a temporary restraining order and a preliminary injunction. *See* Dkt. No. 15. By Order dated April 12, 2013, the Court denied the motion for a temporary restraining order and set a briefing schedule and hearing date for the preliminary injunction motion. *See* Dkt. No. 24. Finally, on May 1, 2013, the State of New York filed a motion to appear as *amicus curia* to support Defendant's motion to dismiss and to oppose Plaintiffs' motion for a preliminary injunction, *see* Dkt. No. 31, which this Court granted on May 3, 2013, *see* Text Order dated May 3, 2013.

### III. DISCUSSION

Section 9613(h) of Title 42 of the United States Code, entitled "Timing of review" and commonly referred to as "Section 113(h)," provides that, with five exceptions not applicable here,

> [n]o Federal court shall have jurisdiction under Federal law other than under section 1332 of Title 28 (relating to diversity of citizenship jurisdiction) or under State law which is applicable or relevant and appropriate under section 9621 of this title (relating to cleanup standards) to review any challenges to removal or remedial action selected under section 9604 of this title, or to review any order issued under section 9606(a) of this title, in any action . . . .

42 U.S.C. § 9613(h).

Plaintiffs do not rely on any of the five exceptions to § 113(h)'s jurisdictional bar to support their position that this Court has subject matter jurisdiction over their claims for injunctive relief. Instead, their sole argument appears to be that § 113(h) does not bar those claims because Plaintiffs are not "challenging" the removal/remedial action that DEC and EPA selected and which Defendant agreed to perform under the Consent Decree. Rather, Plaintiffs

-6-

argue that they are merely seeking to have Defendant comply with the terms of that Consent Decree and that § 113(h) does not divest this Court of subject matter jurisdiction over such a claim.

To determine whether it has jurisdiction over Plaintiffs' claims for injunctive relief, the Court must decide whether those claims "challenge" the removal/remedial action in which Defendant is engaged pursuant to the Consent Decree. Courts that have addressed the issue of what constitutes a "challenge" have construed that term broadly. For example, in *Razore v. Tulalip Tribes of Wash.*, 66 F.3d 236 (9th Cir. 1995), the plaintiffs alleged that the defendants' management of the site violated the Clean Water Act ("CWA") and the Resource Conservation and Recovery Act ("RCRA") and argued that they were not challenging a removal action because the court could fashion CWA and RCRA remedies that would not interfere with the remedial investigation/feasibility study ("RI/FS") and ultimately the selected clean up plan. *See id.* at 239.

The court rejected this argument, stating that "[a]n action constitutes a challenge if it is related to the goals of the cleanup." *Id.* (citation omitted). The district court had found that "'[t]he plaintiffs [were] attempt[ing] to dictate specific remedial actions and to alter the method and order for cleanup during an RI/FS and prior to a determination of the ultimate remedial plan.'" *Id.* at 239-40 (quotation omitted). In addition, the plaintiffs' expert admitted that the work could be halted for days or weeks. *See id.* at 240. Under these circumstances, the Ninth Circuit concluded that the plaintiffs' CWA and RCRA claims were "sufficiently related to the goals of CERCLA cleanup to trigger section 113(h)." *Id.* (citation omitted).

The Third Circuit, in a well-reasoned opinion, reached a similar result in *Clinton Cnty. Comm'rs v. United States Envt'l Protection Agency*, 116 F.3d 1018 (3d Cir. 1997). In that case,

the plaintiffs brought suit against the EPA to enjoin the EPA from proceeding with a trial burn and incineration remedy at the site. *See id.* at 1020. The plaintiffs alleged that the incineration remedy would violate multiple federal environmental laws because it would release ultra-toxic substances into the air, thereby causing irreparable harm to nearby land and residents. *See id.* The district court dismissed the suit for lack of subject matter jurisdiction, and the Third Circuit affirmed.

On appeal, the plaintiffs argued, among other things, that (1) "42 U.S.C. § 9659 confer[red] jurisdiction, despite 42 U.S.C. § 9613(h), because the complaint ma[de] *bona fide* allegations of irreparable harm to public health or the environment"; and (2), "if 42 U.S.C. § 9613(h) preclud[ed] the court from exercising jurisdiction, it must be set aside when irreparable harm is alleged in order to effectuate plaintiffs' constitutional rights of access to the courts at a meaningful time[.]" *Id.* at 1021-22.

The court rejected all of the plaintiffs' arguments and held that "Congress intended to preclude *all* citizens' suits against EPA remedial actions under CERCLA until such actions are complete, regardless of the harm that the actions might allegedly cause." *Id.* at 1022. The court explained that, if it were to adopt the plaintiffs' interpretation and permit judicial review of EPA remedial actions before completion whenever a challenge included *bona fide* allegations of irreparable harm to public health or the environment, it "would undermine Congress's clearly expressed intent because [the court] would create a situation in which response actions could be seriously delayed while EPA refute[d] allegations of irreparable harm which, while '*bona fide*,' m[ight] simply reflect a legitimate difference of opinion about the preferred remedy for a

particular site." *Id.* at 1024.[1,2,3]

   In this case, although Plaintiffs try to circumvent § 113(h)'s jurisdictional bar by arguing that they are merely seeking to require Defendant to comply with the Consent Decree, the WHEREFORE Clause of their complaint belies this characterization of the relief they seek. As noted, Plaintiffs seek two forms of injunctive relief in their WHEREFORE Clause: (1) an Order preliminarily and permanently enjoining Defendant from transporting and dumping contaminated dredged waste at Wastebed 13 and (2) an Order directing Defendant to implement the EPA-

---

[1] The Third Circuit also noted that the Seventh, Eighth, Ninth and Eleventh Circuits had reached the same result. *See Clinton Cty. Comm'rs*, 116 F.3d at 1024 (citing *Schalk v. Reilly*, 900 F.2d 1091, 1095-96 (7th Cir. 1990); *Arkansas Peace Ctr. v. Arkansas Dep't of Pollution Control & Ecology*, 999 F.2d 112 (8th Cir. 1993); *Hanford Downwinders Coalition, Inc. v. Dowdle*, 71 F.3d 1469, 1484 (9th Cir. 1995); *Alabama v. United States Envtl. Protection Agency*, 871 F.2d 1548, 1557 (11th Cir. 1989)).

[2] As the Court noted at oral argument, the Third Circuit also overruled that portion of its decision in *United States v. Princeton Gamma-Tech, Inc.*, 31 F.3d 138 (3d Cir. 1994), in which it had "held that a district court has jurisdiction under § 9613(h)(4) during the pendency of an EPA remedial action when plaintiffs make *bona fide* allegations of irreparable harm." *Clinton Cnty. Comm'rs*, 116 F.3d at 1025.

   In opposition to Defendant's motion to dismiss their claims of injunctive relief, Plaintiffs cited this overruled portion of *Princeton Gamma-Tech, Inc.,* without any indication that the Third Circuit had explicitly overruled it, to support their position that, because they had alleged that Defendant's conduct had resulted in irreparable harm to their health, this Court had jurisdiction over their claims for injunctive relief. Due to Plaintiffs' counsel's apparently deliberate failure to indicate that the proposition for which he cited *Princeton Gamma-Tech, Inc.* was no longer good law, the Court instructed Plaintiffs' counsel to file papers with the Court within fifteen days showing cause why the Court should not sanction him for failing to do so. *See* Fed. R. Civ. P. 11; New York Disciplinary Rule 7-102(A).

[3] As an aside, pursuant to the Court's oversight responsibility with regard to the implementation of the Consent Decree, as the Court ordered, *see State of New York v. Honeywell Int'l, Inc.*, 3:89-CV-815, the Court inquired of the experts whom Defendant retained regarding the health hazards that Plaintiffs alleged and is satisfied that the methods and procedures that Defendant is employing in the cleanup present no health risks to the surrounding communities.

approved and state-of-the-art TO-16 air monitoring system around Wastebed 13 in the vicinity of Plaintiffs' homes so that the air can be monitored on a real time basis for airborne contamination relating to Defendant's operations. *See* Complaint at WHEREFORE Clause. Both of these claims for relief would require changes to the terms of the Consent Decree. Such changes are undoubtedly related to the goals of the clean up of the Site; and, thus, they are "challenges" to the remedial action that was selected under CERCLA and to which the State of New York and Defendant, i.e., the parties to the Consent Decree, agreed.

Furthermore, the cases that Plaintiffs cite to support their position that § 113(h) is not a jurisdictional bar to their claims for injunctive relief are clearly distinguishable from this case. In *In re Chateaugay Corp.*, 944 F.2d 997 (2d Cir. 1991), the court addressed issues "at the intersection of bankruptcy law and environmental law." *Id.* at 999. The specific issue before the court was whether response costs that the EPA had incurred under CERCLA were pre-petition claims, dischargeable in bankruptcy, regardless of when the EPA incurred such costs, as long as those claims concerned a release or threatened release of hazardous substances that occurred before the debtor filed its Chapter 11 petition. *See id.*

The court held that CERCLA's prohibition against pre-enforcement review was not applicable because the court was

> not being called upon to "review any challenges to removal or remedial action selected under section 9604 of this title, or to review any order issued under section 9606(a) of this title." 42 U.S.C. § 9613(h) (1988) . . . [and that, therefore, the court] need not decide whether CERCLA's ban on pre-enforcement review, if applicable, would constitute an implied repeal of the authority otherwise conferred on federal courts by the Bankruptcy Code.

*Id.* at 1006.

The court further explained that, although the EPA feared that

> even an estimation process would "embroil the parties and the bankruptcy court in disputes over the wisdom and scope of possible remedies," . . . nothing prevent[ed] the speedy and rough estimation of CERCLA claims for purposes of determining EPA's voice in the Chapter 11 proceedings, with ultimate liquidation of the claims to await the outcome of normal CERCLA enforcement proceedings in which EPA [would] be entitled to collect its allowable share (full or pro rata, depending on the reorganization plan) of incurred response costs.

*Id.* (citations omitted).

*In re Chateaugay Corp.* is clearly distinguishable from this case. In that case, it was the EPA that sought to ensure that, despite the potentially responsible party's Chapter 11 petition, the EPA would be able to recover its response costs even though those response costs had not yet been determined at the time that the potentially responsible party had filed its petition. Furthermore, there was no third-party mounting a challenge to a remedial or removal action that had been selected under CERCLA. To the contrary, in this case, Plaintiffs, who are not parties to the Consent Decree, have mounted just such a challenge. Therefore, the Second Circuit's decision in *In re Chateaugay Corp.* has no bearing on the issues in this case.

In *Reardon v. United States*, 947 F.2d 1509 (1st Cir. 1991), the EPA, after removing hazardous substances from the plaintiffs' property, filed a notice of lien on that property for the amount it had spent pursuant to 42 U.S.C. § 9607(l). *See id.* at 1510. The plaintiffs sued to have the notice of lien removed on three grounds: (1) they were not liable for the cleanup costs, (2) the lien was over-extensive, and (3) the filing of the lien notice without a hearing deprived them of property without due process. *See id.* The district court determined that it did not have jurisdiction to hear the plaintiffs' two statutory claims but that it did have jurisdiction to hear

their constitutional due process claim. *See id.* However, it ruled that the filing of a lien did not amount to a taking of a significant property interest for purposes of the due process clause and, therefore, denied their motion for a preliminary injunction and dismissed their complaint. *See id.* The plaintiffs appealed, and a panel of the First Circuit ruled in their favor on statutory grounds. *See id.* However, the First Circuit *en banc* reconsidered the plaintiffs' appeal and concluded that, although it did not have jurisdiction to consider the plaintiffs' statutory claims, CERCLA's lien provisions violated the due process clause. *See id.*

With respect to the plaintiffs' due process claim, the First Circuit held that such a claim did not fit into the literal language of § 9613(h). *See id.* at 1514. The court explained that, under its reading, § 9613(h) "divest[ed] federal courts of jurisdiction over challenges to EPA's *administration* of the statute — claims that EPA did not '*select[]*' the proper 'removal or remedial action,' in light of the standards and constraints established by the CERCLA statutes." *Id.* The court concluded that the plaintiffs' due process claim was not such a challenge nor did it concern the merits of any particular removal or remedial action. *See id.* Instead, the court found that the plaintiffs' challenge was "a challenge to the CERCLA statute itself — to a statutory scheme under which the government is authorized to file lien notices without any hearing on the validity of the lien." *Id.*

Furthermore, the court noted that it read § 9613(h) "in light of the Supreme Court's oft-repeated pronouncement that 'where Congress intends to preclude judicial review of constitutional claims its intent to do so must be clear.'" *Id.* (quotation and other citations and footnote omitted). However, the court made clear that it was not holding that all constitutional challenges involving CERCLA would fall outside the scope of § 9613(h) but "only that a

-12-

constitutional challenge to the CERCLA *statute* [was] not covered by § 9613(h)." *Id.* at 1515.

Unlike the plaintiffs in *Reardon*, Plaintiffs in this case are not challenging the CERCLA statute itself. Nor are they bringing a constitutional claim against the United States. Rather, they are challenging the implementation of a remedial action to which the United States, the State of New York, and Defendant agreed. Thus, the court's decision in *Reardon* with respect to the plaintiffs' constitutional claim has no bearing on this case. Furthermore, the injunctive claims in this case are similar to the statutory claims at issue in *Reardon* over which the district court and the First Circuit found they had no jurisdiction.

Finally, the Tenth Circuit's decision in *United States v. State of Colorado*, 990 F.2d 1565 (10th Cir. 1993), is not dispositive of the issues in this case. The specific issue in that case was

> whether a state which has been authorized by the Environmental Protection Agency ("EPA") to "carry out" the state's hazardous waste program "in lieu of" RCRA, *see* 42 U.S.C. § 6926(b) . . . is precluded from doing so at a hazardous waste treatment, storage and disposal facility owned and operated by the federal government which the EPA has placed on the national priority list . . . and where a CERCLA response action is underway. . . .

*Id.* at 1568-69 (internal citations omitted).

On appeal, the Tenth Circuit found that "§ 9613(h) does not bar federal courts from reviewing a CERCLA response action prior to its completion; rather it bars federal courts from reviewing any 'challenges' to CERCLA response actions." *Id.* at 1575. The court, therefore, held that the State of Colorado's action "to enforce the final amended compliance order, issued pursuant to its EPA-delegated RCRA authority, [was] not a 'challenge' to the Army's CERCLA response action." *Id.* However, the court explained that, "to the extent that a state seeks to challenge a CERCLA response action, the plain language of § 9613(h) would limit a federal

-13-

court's jurisdiction to review such a challenge." *Id.* at 1576 (citation omitted).

The Tenth Circuit was very careful to distinguish the case before it from other cases in which the plaintiffs had sought to challenge ongoing CERCLA remedial actions. Initially, the court made clear that Colorado was not seeking to delay the CERCLA cleanup but was "merely seeking to ensure that the cleanup is in accordance with state laws which the EPA has authorized Colorado to enforce under RCRA." *Id.* at 1576. Next, the court distinguished the case before it from *Schalk v. Reilly*, 900 F.2d 1091 (7th Cir.), *cert. denied*, 498 U.S. 981 (1990), in which the Seventh Circuit had "held that § 9613(h) barred private citizens from bringing a CERCLA citizen suit which challenged a consent decree between the EPA and a responsible party on the grounds that failure to prepare an environmental impact statement violated the National Environmental Policy Act[.]" *Id.* The Tenth Circuit distinguished *Schalk* by noting that, in that case, the plaintiffs' CERCLA citizen suit was jurisdictionally barred by § 9613(h)'s plain language. *See id.* at 1577 (citations omitted). The court concluded that, because Colorado had not asserted and did not need to assert jurisdiction under CERCLA's citizen suit provision, *Schalk*'s reasoning did not apply. *See id.*

The Tenth Circuit also found that the Third Circuit's decision in *Boarhead Corp. v. Erickson*, 923 F.2d 1011 (3d Cir. 1991), was distinguishable. In *Boarhead*, the Third Circuit held that § 9613(h) barred the federal court from exercising federal question jurisdiction under the National Historic Preservation Act in an action in which the plaintiffs sought to stay the EPA's CERCLA response action pending determination of whether property qualified for historic site status. *See State of Colorado*, 990 F.3d at 1577. The Tenth Circuit noted that, in *Boarhead*, the plaintiff was a responsible party under CERCLA and that, therefore, "the plaintiff's action to

-14-

proceed would have been contrary to Congress' expressed intent in enacting § 9613(h)." *Id.* Moreover, the Tenth Circuit noted that "the plaintiff's complaint in *Boarhead* sought to **stay the CERCLA remedial action**; thus, the plaintiff's action under the Preservation Act **clearly constituted a challenge** to the CERCLA remedial action." *Id.* (citation omitted) (emphasis added).

This case is much more similar to *Schalk* and *Boarhead* than it is to *State of Colorado*. As in *Schalk*, Plaintiffs are private parties who are attempting to challenge a consent decree between the State of New York and Defendant, who is a responsible party. Thus, for the same reason that the Tenth Circuit found *Schalk* distinguishable, this case is likewise distinguishable. Finally, through their claims for injunctive relief, Plaintiffs are attempting to stay or, at the very least, delay the remedial action on which the State of New York and Defendant agreed, which is indistinguishable from what the plaintiff in *Boarhead* was attempting to do and which the Tenth Circuit concluded was clearly a challenge to a CERCLA remedial action.

Accordingly, based on the plain language of § 113(h) and the case law interpreting that statutory provision, particularly the Third Circuit's well-reasoned decision in *Clinton Cnty. Comm'rs*, the Court concludes that it does not have subject matter jurisdiction over Plaintiffs' claims for injunctive relief. Therefore, the Court grants Defendant's motion to dismiss those claims. In addition, because the Court lacks jurisdiction over Plaintiffs' claims for injunctive relief, the Court must deny Plaintiffs' motion for a preliminary injunction for the same reason.[4]

---

[4] The Court notes, alternatively, that Plaintiffs do not have standing to challenge or enforce the Consent Decree to which they are not parties. *See, e.g., United States v. FMC Corp.*, 531 F.3d 813, 819-20 (9th Cir. 2008); *United States v. City of Ft. Lauderdale*, 81 F. Supp. 2d 1348, 1350 (S.D. Fla. 1999).

## IV. CONCLUSION

After reviewing the entire record in this matter, the parties' submissions and oral arguments, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendant's motion to dismiss Plaintiffs' claims for injunctive relief is **GRANTED**; and the Court further

**ORDERS** that Plaintiffs' motion for a preliminary injunction is **DENIED**; and the Court further

**ORDERS** that this matter is referred to Magistrate Judge Peebles for all further pretrial matters.

**IT IS SO ORDERED.**

Dated: May 28, 2013
       Syracuse, New York

_____
Frederick J. Scullin, Jr.
Senior United States District Court Judge